**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

UNITED STATES OF AMERICA

      v.

GREGG SMITH,
MICHAEL NOWAK,
JEFFREY RUFFO, and
CHRISTOPHER JORDAN,

           Defendants.

Case No. 19-cr-00669

Hon. Edmond E. Chang

**DEFENDANT GREGG SMITH'S REPLY MEMORANDUM OF LAW
REGARDING REQUEST TO EXCLUDE
<u>PROPOSED GOVERNMENT EXHIBITS 84 AND 463</u>**

Sean S. Buckley
Jonathan D. Cogan
Matthew I. Menchel
Leanne A. Bortner
Christopher S. Cogburn
Michael Brasky
Kobre & Kim LLP
111 West Jackson Boulevard
Chicago, IL 60604

*Counsel for Gregg Smith*

Defendant Gregg Smith respectfully submits this reply brief in further support of his request to exclude Proposed Government Exhibits 84 and 463 ("GX 84" and "GX 463," respectively and, together, the "Exhibits").

## ARGUMENT

There are two exhibits at issue, both concerning alleged conduct of Mr. Smith while employed as a trader at Bear Stearns: GX 84, which is a March 6, 2008, chat between co-defendant Ruffo and a Bear Stearns customer, and GX 463, which is a snippet of Mr. Smith's trading activity that the Government claims correlates with that customer order. The Government alleges that the Exhibits are admissible as direct evidence of the Counts alleged against Mr. Smith in the Second Superseding Indictment (the "Indictment"). The admissibility of the Exhibits as direct evidence is not supported by the text of the Indictment, nor is there any other permissible basis for the Government to introduce the Exhibits at trial.

*First*, the Exhibits are not direct evidence of any of the charges against Mr. Smith because they pre-date the unlawful conduct as alleged in the Indictment. Specifically, the conspiracy counts (Counts One and Two) are limited to conduct that occurred at JPMorgan, and, per the Indictment, Mr. Smith did not join JPMorgan until May 2008—two months after the conduct depicted in the Exhibits. And the Government has stipulated that it will rely solely on the trading sequences specifically identified in the Indictment to prove attempted price manipulation (the only substantive Count against Mr. Smith that covers conduct dating back to March 2008). GX 463 is not one of those sequences.

*Second*, the Exhibits are inadmissible as "other acts" evidence under Federal Rule of Evidence 404(b) because the Government failed to provide timely notice under Rule 404(b)(3) and, alternatively, because they are improper propensity evidence under Rule 404(b)(1).

*Alternatively*, the Exhibits should be precluded under Federal Rule of Evidence 403 because their probative value is substantially outweighed by the risk of unfair prejudice and/or because they constitute needlessly cumulative evidence.

For the same reasons, the Government should be precluded from offering at trial any evidence concerning Mr. Smith's trading activity prior to joining JPMorgan.

## I. THE EXHIBITS ARE NOT DIRECT EVIDENCE OF ANY OF THE CHARGES AGAINST MR. SMITH

### A. The Exhibits Are Not Direct Evidence of the Conspiracy Counts

There are two conspiracy Counts in the Indictment. Count One is a racketeering conspiracy ("RICO Conspiracy Count") and Count Two is a conspiracy under 18 U.S.C. § 371 ("Section 371 Conspiracy Count"). As explained in more detail below, neither purports to cover conduct that occurred before Mr. Smith joined JPMorgan. And, because pre-conspiracy conduct is no longer admissible in the Seventh Circuit as direct evidence of a conspiracy, the Exhibits cannot be offered as direct evidence of either count.

#### 1. The Exhibits Are Not Direct Evidence of the RICO Conspiracy

The Government appears to concede in its brief that evidence of Mr. Smith's conduct while at Bear Stearns is not direct evidence of the RICO Conspiracy Count. The Indictment defines the racketeering "enterprise" as the JPMorgan Precious Metals Desk (Indictment ¶ 17, ECF No. 448) and Defendants as "persons employed by and associated with the JPMorgan Precious Metals Desk" (*id.* ¶ 22). Mr. Smith's conduct while employed at Bear Stearns thus cannot be direct evidence of his participation in an enterprise defined as the JPMorgan Precious Metals Desk where his role was that of a person employed by JPMorgan.

### 2. The Exhibits Are Not Direct Evidence of the Section 371 Conspiracy Count

The Government's opposition focuses on the Section 371 Conspiracy Count and states that, because the Indictment alleges that the conspiracy began in "March 2008," a March 6, 2008, chat and trading episode necessarily fall within the conspiracy period—regardless of whether Mr. Smith was trading for Bear Stearns or JPMorgan. This is false. The Indictment must be read "as a whole, focusing on a practical, rather than hypertechnical, reading of the document." *United States v. Moore*, 563 F.3d 583, 585 (7th Cir. 2009); *accord United States v. Castaldi*, 547 F.3d 699, 703 (7th Cir. 2008). And, when read as a whole, the Section 371 Conspiracy Count against Mr. Smith is clearly limited to conduct that occurred while Mr. Smith was employed at JPMorgan.

*First*, the Section 371 Conspiracy Count incorporates by reference every substantive allegation in the RICO Conspiracy Count (Indictment ¶ 47); therefore, it is similarly limited in scope to Defendants' conduct while employed at JPMorgan.

*Second*, in the same sentence of the Indictment that defines the conspiracy period as beginning in March 2008, the Indictment also states that "each of the defendants [including Gregg Smith] was an employee of JPMorgan, and was employed on, and associated with . . . the JPMorgan Precious Metals Desk" at various times during the conspiracy period (Indictment ¶ 47 (incorporating ¶ 18)). In other words, the sentence defining the conspiracy period limits it to conduct that occurred while Defendants were employed at JPMorgan. The language from this same paragraph quoted by the Government—essentially that Mr. Smith was employed by Bear Stearns until it was acquired by JPMorgan in May 2008 and that "[f]*or the remainder of the Conspiracy Period*" he was employed by JPMorgan—supports this interpretation. (Gov't Opp'n at 1 (quoting Indictment ¶ 18(a)), ECF No. 553.) Unlike some of his co-Defendants and alleged co-conspirators, Mr. Smith was not employed by JPMorgan (and thus not a member of the

conspiracy) from its inception.  Rather he is alleged to have joined in May 2008, and from May 2008 through "the remainder of the Conspiracy Period" he was employed at JPMorgan.

*Third*, the Indictment defines the purpose of the Section 371 Conspiracy as "[m]aximizing trading profits and minimizing losses for the Defendants and their co-conspirators, the JPMorgan Precious Metal Desk, and JPMorgan itself through unlawful trading practices."  (Indictment ¶ 49(a).)  The Government notes that the Indictment also lists two other purposes and that "defendants need not have pursued all three goals at the same time." (Gov't Opp'n at 2.)  However, Mr. Smith could not have pursued either of these other purposes while employed at Bear Stearns. He could not have "[c]onceal[ed] the unlawful activities of the Defendants and their co-conspirators from scrutiny by JPMorgan [and others]" (*id.* ¶ 49(c)), when he was not employed by JPMorgan.  And, regardless, the Exhibits are not relevant to any concealment efforts.  (*See* June 2, 2022, Pretrial Conf. Tr. at 75 (Government arguing that the documents show Mr. Smith "spoof[ing] up the market" to fill a customer order).)  Nor could Mr. Smith have "[p]romoted and enhanced" a conspiracy to maximize trading profits for JPMorgan while he was employed at Bear Stearns.  (Indictment ¶ 49(b).)[1]

*Finally*, one of the objects of the Section 371 Conspiracy is wire fraud affecting a financial institution, and JPMorgan is the financial institution allegedly affected.  (*Id.* ¶ 48(a).)  While the other objects—commodities fraud, price manipulation, and spoofing—are not, on their face, limited to JPMorgan, they are all based on the *exact same trading conduct.*  (*Id.* ¶ 47; *see also, e.g.*, Gov't Opp'n to Mot. to Dismiss at 45 n.29, ECF No. 166 (Government limiting the

---

[1] The Indictment states this purpose of the conspiracy as follows: "Promoting and enhancing the conspiracy and the activities of the Defendants and their co-conspirators."  (Indictment ¶ 49(b).) As the purpose or goal of a conspiracy must be to "commit a crime" (Proposed Jury Instructions Request 24, ECF No. 514-1), the only reasonable interpretation of this allegation is as described above.

substantive price manipulation and spoofing claims to just the specific JPMorgan trading sequences alleged in the indictment).)

Accordingly, the Section 371 Conspiracy Count is limited to Mr. Smith's conduct while employed at JPMorgan. Because the Exhibits relate to conduct before Mr. Smith was employed at JPMorgan, they cannot be direct evidence of the conspiracy counts.

### 3. The Seventh Circuit No Longer Recognizes Pre-Conspiracy Evidence as Direct Evidence of a Conspiracy

Because GX 463 and GX 84 involve pre-conspiracy conduct, under Seventh Circuit law, they cannot be offered as direct evidence of the conspiracy. Pre-conspiracy evidence that "helps to complete the story of the crime on trial, if its absence would create a chronological or conceptual void in the story of the crime, or if it is so blended or connected that it incidentally involves, explains the circumstances surrounding, or tends to prove an element of the charged crime"[2] is no longer admissible in the Seventh Circuit as direct evidence. *United States v. Gorman*, 613 F.3d 711, 719 (7th Cir. 2010). Prior to *Gorman*, evidence that was "inextricably intertwined" with the charged conduct was considered direct evidence, "and therefore, d[id] not implicate Rule 404(b) at all." *Id.* at 717-18. However, the Seventh Circuit in *Gorman* overruled its prior line of cases, holding that "resort to inextricable intertwinement is unavailable when determining a theory of admissibility" because, "[i]f evidence is not direct evidence of the crime itself, it is usually propensity evidence simply disguised as inextricable intertwinement evidence, and is therefore improper, at least if not admitted under the constraints of Rule 404(b)." *Id.* at 718-19; *see also United States v. Taylor*, 522 F.3d 731, 735 (7th Cir. 2008) (finding the "inextricably interwoven" doctrine unsatisfactory because its "vagueness invites prosecutors to expand the exceptions to the

---

[2] *United States v. McLee*, 436 F.3d 751, 760 (7th Cir. 2006), *overruled by United States v. Gorman*, 613 F.3d 711 (7th Cir. 2010).

rule beyond the proper boundaries of the exceptions"); *United States v. Schmitt*, 770 F.3d 524, 533 (7th Cir. 2014) (noting that the district court's reliance on the inextricably intertwined doctrine "runs counter to our recent precedent"). Instead, the admissibility of pre-conspiracy evidence (formerly admissible under the inextricably intertwined doctrine) is governed by Rule 404(b). *Gorman*, 613 F.3d at 718; *see also, e.g.*, *Taylor*, 522 F.3d at 735 (recognizing that "[a]lmost all evidence admissible under the 'inextricably interwoven' doctrine is admissible under one of the specific exceptions to Rule 404(b)"); *cf. United States v. Alviar*, 573 F.3d 526, 538 (7th Cir. 2009) (court must look to the scope of the indictment itself to determine whether conduct is direct evidence of guilt or "other bad acts" evidence governed by Rule 404(b).)

Accordingly, the Exhibits—and any other pre-conspiracy evidence—must satisfy Rule 404(b) to be admissible.

### B. The Exhibits Are Not Direct Evidence of the Substantive Counts

Nor are the Exhibits admissible as direct evidence of the substantive attempted price manipulation count against Mr. Smith, as the Government alleges.[3] The Government argues that, even though it "has indeed stipulated that it will prove the attempted price manipulation charge against defendant Smith using the specific trading sequences in paragraph 30 [of the Indictment]" (and the trading sequence reflected in GX 463 is not one of those sequences), somehow "other evidence of the scheme is relevant and admissible." (Gov't Opp'n at 3.) In other words, even though the Government stipulated that it will rely solely on the specific trading sequences in the Indictment, it does not need to rely solely on the specific trading sequences in the Indictment.

---

[3] The Government concedes that these Exhibits are not relevant to any of the other substantive counts against Mr. Smith.

Such an interpretation of the Government's stipulation would render it meaningless, and the Court should reject the Government's argument.

The Government's stipulation was proffered in response to Defendants' motion to dismiss the First Superseding Indictment, in which Defendants argued (among other things) that the attempted price manipulation count should be dismissed for lack of specificity because, even though it was pled as a scheme, the Government was nonetheless required to identify the particular trading sequences with specificity. The First Superseding Indictment (like the current Indictment) included a list of at-issue trading sequences "among others," and Defendants argued that the "among others" language expanded the conduct underlying the charge beyond what was enumerated in the indictment. In response, the Government stated that it "does not dispute that any trading sequences offered to prove [the attempted price manipulation charge] must be confined to those enumerated in the Superseding Indictment." (Gov't Opp'n to Mot. to Dismiss at 45, ECF No. 166.) The Court relied on this representation when denying Defendants' motion to dismiss this count: "The government agrees that it will prove the attempted price manipulation . . . counts only via the listed trading sequences. So there is no reason to dismiss the counts for lack of specificity, given the government's stipulation." (Order at 28, ECF No. 374.)

The Government reiterated and elaborated on the purpose of its stipulation in response to Defendants' motion to dismiss the attempted price manipulation count in the operative Indictment:

> [W]ith respect to the Government's assertion in its prior opposition that it would prove the attempted price manipulation charges through the specified trading sequences listed in [the attempted price manipulation] counts: this statement remains true. . . . As background, the purpose of the Government's original statement was to assure the Court and the defendants that ***these counts would not be proven through trading sequences not specifically listed in the relevant counts***, *i.e.*, that the defendants would have sufficient notice. Specifically, the statement was made to refute the claim that the defendants were not adequately informed of the nature of the

charges because the attempted price manipulation counts alleged specific trading sequences "among others." . . . ***[T]he Government will prove such charges through the specific trading sequences alleged, as opposed to proving its case through unspecified trading sequences.***

(Gov't Opp'n to Mot. to Dismiss Second Superseding Indictment at 17, ECF No. 473 (emphasis added).) The Court again relied on this representation in denying the motion to dismiss. (Order at 3, ECF No. 523 (adopting its prior reasoning).)

The Government is now trying to prove its case "through unspecified trading sequences"— namely, the sequence reflected in GX 463—despite its prior stipulation to the contrary. The Government entered into a stipulation to avoid dismissal, and it must be held to its stipulation. If the Government persists in its stated intention to violate the terms of its stipulation, the Court should dismiss the attempted price manipulation charge for lack of specificity.

## II.    THE EXHIBITS DO NOT SATISFY RULE 404(b) AND ARE INADMISSIBLE AS OTHER-ACTS EVIDENCE

GX 463 and GX 84 (and any other evidence of Mr. Smith's trading activity at Bear Stearns) are inadmissible under Federal Rule of Evidence 404(b) because the Government failed to provide timely notice under Rule 404(b)(3) and, alternatively, because they are improper propensity evidence under Rule 404(b)(1).

Rule 404(b)(3) provides that, in a criminal case, the prosecutor must provide "reasonable notice" of the Government's intention to offer evidence of "any other crime, wrong, or act" at trial, "so that the defendant has a fair opportunity to meet it." Rule 404(b)(3) further specifies that such notice must "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." Here, the Court set a deadline of July 9, 2021, for the Government to provide such notice to Defendants. (Minute Entry, Jan. 28, 2021, ECF No. 260.) The Government failed to do so. The Court then set a new deadline of June 9,

2022—nearly a year after the initial deadline—for the Government to articulate the non-propensity purpose for which it intends to offer GX 84, in accordance with Rule 404(b)(3)(B). (June 2, 2022, Pretrial Conf. Tr. at 78:15-24.) The Government again failed to do so. Having disregarded two Court-ordered deadlines without good cause, the Government should now be prohibited from offering *any* Rule 404(b) evidence at trial. Fed. R. Evid. 404, 1991 Advisory Committee Notes ("Because the notice requirement serves as condition precedent to admissibility of 404(b) evidence, the offered evidence is inadmissible if the court decides that the notice requirement has not been met."); *see also, e.g.*, *United States v. Vega*, 188 F.3d 1150, 1155 (9th Cir. 1999) (finding that district court erred in allowing prosecution to introduce "other acts" evidence at trial when it failed to provide reasonable notice); *United States v. Carrasco*, 381 F.3d 1237, 1241 (11th Cir. 2004) (same).

Regardless, there is no non-propensity purpose for which the Government can offer the Exhibits: a chart depicting Mr. Smith's trading activity within a five-minute period on March, 6, 2008, that allegedly correlates with a Bear Stearns customer order, which the Government contends is an example of Mr. Smith "spoof[ing] up the market." (June 2, 2022, Pretrial Conf. Tr. at 78:9.) Rule 404(b) prohibits evidence of "any crime, wrong, or act" if the purpose is to show the defendant's propensity to behave in a certain way, but such other-act evidence "may be admissible for another purpose," such as intent, preparation, plan, or absence of mistake. Fed. R. Evid. 404(b). As the Seventh Circuit held in *Gomez*, "it's not enough for the proponent of other-act evidence simply to point to a purpose in the 'permitted' list and assert that the other-act evidence is relevant to it." 763 F.3d at 856. Rather, "the rule allows for the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning." *Id.*

Here, to the extent the Government claims to offer the Exhibits for a non-propensity purpose, when one looks beyond whatever non-propensity purpose the Government may proffer and considers "what inferences the jury is being asked to draw from that evidence, and by what chain of logic," it is clear that "despite the label, the jury is essentially being asked to rely on the evidence as proof of the defendant's propensity to commit the charged offense." *United States v. Lee*, 724 F.3d 968, 978 (7th Cir. 2013); *see also Gomez*, 763 F.3d at 856 ("Rule 404(b) excludes the evidence if its relevance to 'another purpose' is established only through the forbidden propensity inference."). For example, the Government noted at the first pretrial conference that this would be evidence of the "manner or means" of the conspiracy. (June 2, 2022, Pretrial Conf. Tr. at 77:9.) In other words, Defendants allegedly accomplished the purpose of the conspiracy—to service and benefit key JPMorgan customers—through the use of the same allegedly fraudulent trading strategy employed by Mr. Smith as reflected in GX 463. But this argument rests on pure propensity: Because Mr. Smith employed an allegedly fraudulent trading strategy to benefit a Bear Stearns customer in early March 2008, he must have employed an allegedly fraudulent trading strategy to benefit JPMorgan customers during the conspiracy. As this relevance "is established only through the forbidden propensity inference," it is inadmissible under *Gomez*. 763 F.3d at 856.

### III. THE EXHIBITS SHOULD BE PRECLUDED UNDER RULE 403

GX 84 and GX 463 also should be precluded under Rule 403. "Other-act evidence raises special concerns about unfair prejudice because it almost always carries some risk that the jury will draw the forbidden propensity inference." *Gomez*, 763 F.3d at 857. As such, the Seventh Circuit requires courts to conduct a Rule 403 analysis before admitting evidence under Rule 404(b). *See, e.g.*, *United States v. Miller*, 673 F.3d 688, 697 (7th Cir. 2012) ("[A]ll bad acts

evidence must be balanced for probative value and unfair prejudice."); *Gomez*, 763 F.3d at 856 ("[E]ven if other-act evidence is relevant without relying on a propensity inference, it may be excluded under Rule 403, which applies with full force in this context."). Here, GX 84 and 463 run afoul of Rule 403 in two distinct manners. *First*, as described above, the Exhibits should be precluded because the risk of the improper propensity inference substantially outweighs whatever non-propensity purpose the Government may try to articulate. *Second*, as detailed below, the proffered evidence is also needlessly cumulative to accomplish any purported non-propensity purpose.

"Evidence is 'cumulative' when it adds very little to the probative force of the other evidence in the case, so that if it were admitted its contribution to the determination of truth would be outweighed by its contribution to the length of the trial, with all the potential for confusion . . . that a long trial creates." *United States v. Williams*, 81 F.3d 1434, 1443 (7th Cir. 1996). Here, the Government is expected to offer evidence of *nine* other trading episodes of Mr. Smith (similar to GX 463) that took place within the alleged conspiracy period, all of which are accompanied by a contemporaneous chat between Mr. Ruffo and a customer (similar to GX 84, except the communications are with JPMorgan customers and, thus, are direct evidence of the conspiracy counts).[4] The Government is expected to argue that these nine episodes, like the episode reflected in GX 84 and 463, are evidence of Mr. Smith allegedly spoofing to benefit a customer order. Additionally, the Government is expected to introduce evidence of ***106*** additional trading episodes of Mr. Smith in a format nearly identical to GX 463.[5] According to the Government, all 115 additional trading episodes depict a similar, allegedly unlawful trading strategy—the same trading

---

[4] Eight of these chats are with an employee of Moore Capital and the ninth is with an employee of Tudor Investment Corp. GX 464-465, 470-471, 473-476, 482.
[5] GX 450, 466-467, 478-479, 481, 485.

strategy the Government claims is depicted in GX 463. Thus, the Exhibits add very little, if anything, to the probative force of the other nine trading episodes with accompanying chats that the Government contends reflect customer orders or of the 106 other allegedly unlawful trades that are on the Government's exhibit list. As such, the Exhibits are needlessly cumulative and unduly prejudicial in light of their risk that the jury will draw the forbidden propensity inference, and, therefore, they should be precluded under Rule 403.

## **CONCLUSION**

For the foregoing reasons, the Government should be precluded from offering GX 463, GX 84, and any other evidence of Mr. Smith's trading activity while at Bear Stearns against Mr. Smith.

Dated: June 21, 2022

Respectfully submitted,

/s/ Sean S. Buckley
Sean S. Buckley
Jonathan D. Cogan
Matthew I. Menchel
Leanne A. Bortner
Christopher S. Cogburn
Michael Brasky
KOBRE & KIM LLP
111 West Jackson Boulevard
Chicago, IL 60604
(212) 488-1206

*Counsel for Gregg Smith*